UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

DEC 1 5 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-612-GWU

PATRICIA CODY,                                                       PLAINTIFF,

VS:                     <u>MEMORANDUM OPINION</u>

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT,

<u>INTRODUCTION</u>

Patricia Cody brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment (SSI).

<u>APPLICABLE LAW</u>

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. <u>See</u> 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Cody, a 29 year-old woman with an 8th grade education and no past relevant work history, suffered from impairments related to depression, anxiety, borderline intellectual functioning, and being status post hernia and knee repair. (Tr. 29, 33). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of sedentary level work. (Tr. 37). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 37). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 36).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the current record also does not mandate an immediate award of SSI. Therefore, the Court must grant the plaintiff's summary judgment, in so far as it seeks a remand of the action for further consideration, and deny that of the

5

defendant.

The hypothetical question presented to Vocational Expert Norman Hankins at the first administrative hearing held on September 16, 2003 included an exertional limitation to sedentary work along with such non-exertional restrictions as (1) an inability to climb, kneel, squat, or crawl; (2) a "limited but satisfactory" ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, carry out simple instructions, maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations; (3) a "seriously limited but not precluded" ability to deal with the public, function independently, carry out detailed instructions, and demonstrate reliability; and (4) "no useful" ability to carry out complex instructions. (Tr. 606). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 606-607). The witness reaffirmed this testimony at the second administrative hearing held on May 4, 2004. (Tr. 640). At this time the ALJ submitted an additional question changing the mental factors to a restriction to simple, one-two-step job tasks and instructions with only casual public contact and medium to low stress work environments. (Tr. 640). Hankins reported that there would be no change in the previously-cited job numbers. (Tr. 641). The ALJ relied upon this testimony to provide the job numbers to meet his burden of demonstrating that a significant number of jobs existed which Cody could perform despite her impairments.

The hypothetical factors considered by Hankins did not fairly characterize Cody's condition, as required by Varley. Psychologist Gary Maryman examined the plaintiff on two occasions. Each time, Maryman administered intelligence testing which produced IQ scores in the range of mild mental retardation. (Tr.

6

235, 484). On each occasion, the examiner opined that these scores were an underestimate of the claimant's ability. (Tr. 235, 484). Maryman ultimately diagnosed borderline intelligence. (Tr. 236, 486). Psychologist Neil Lewis testified at the administrative hearing as a medical advisor and agreed that a diagnosis of borderline intelligence was appropriate. (Tr. 633). Lewis further reported that a diagnosis of borderline intelligence would mean that approximately 91 percent of the population would be more intelligent than one so diagnosed. (Tr. 633). Thus, a person who was of borderline intelligence would rank in the bottom ten percent of the population in intelligence. As previously noted, the ALJ himself specifically found that borderline intelligence was a "severe" impairment afflicting the claimant. (Tr. 33). Therefore, the fact that the claimant's intelligence was in the lowest ten percent of the population appears well-supported in the current record.

During the second administrative hearing, Hankins was asked to discuss the Dictionary of Occupational Titles (DOT) job criteria relating to aptitudes. One of these sections was the General Learning Aptitude (GLA). The DOT was reported to use a five-point scale in classifying the GLA of jobs with rating of 1 requiring the highest level of intelligence and 5 being the lowest ranking. (Tr. 643). A rating of 5 was reported to mean that the job could be performed by one in the bottom ten percent of the population in intelligence. (Tr. 643). A rating of 4 was said to indicate that the job could be performed by the bottom third of the population, exclusive of the bottom ten percent. (Tr. 643). Hankins testified that all of the jobs he had cited in response to the ALJ's hypothetical questions had a GLA rating of 4. (Tr. 644). Thus, the cited jobs would not be available to one whose intelligence level was in the bottom ten percent of the population. The issue of GLA rating was a very significant factor which was not included in the

7

ALJ's findings, and the jobs cited by Hankins clearly do not accommodate this additional mental limitation relating to borderline intellectual functioning. Therefore, they cannot be considered to support the administrative decision.

The defendant asserts that the ALJ's hypothetical question fairly depicted Cody's mental status and notes that Hankins specifically testified that his testimony was compatible with the DOT. (Tr. 609). However, as previously noted, the hypothetical question presented and relied by upon the ALJ did not specify that the hypothetical individual's intelligence level was in the lowest ten percent of the population. The testimony of Hankins certainly indicates that this was a crucial factor and made clear that the cited jobs could not be performed by one in the bottom ten percent of the population in intelligence. Therefore, the action must be reversed and remanded to determine whether a significant number of jobs at the sedentary level with a GLA rating of 5 remain available because this is a question not specifically answered by Hankins' hearing testimony.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the Court must grant the plaintiff's summary judgment motion in so far as such relief is achieved and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 15 day of December, 2006.

G. WIX UNTHANK
SENIOR JUDGE